# UNITED STATES DISTRICT COURT

# DISTRICT OF COLORADO

**Civil Case No. 1:24-cv-02225-SBP**

**PRESTON ADGER,**

       **Plaintiff,**

v.

**TERRAQUEST, INC.** and **DERRICK NEHRENBERG**, an individual,

       **Defendants**.

---

### DEFENDANT DERRICK NEHRENBERG'S ANSWER TO COMPLAINT

---

Defendant Derrick Nehrenberg ("Defendant"), appearing pro se, hereby answers the Complaint of Plaintiff Preston Adger as follows:

### INTRODUCTION

1. Defendant admits that Plaintiff was not paid for certain periods of work but denies any personal liability for such unpaid wages. Defendant affirmatively states that any non-payment was due to TerraQuest's severe financial difficulties despite extensive efforts to secure funding and save the company.

2. Defendant admits that Plaintiff brings this action but denies any personal liability under the cited statutes.

### JURISDICTION AND VENUE

3-5. These paragraphs state legal conclusions to which no response is required. To the extent a response is required, Defendant does not contest this Court's jurisdiction or venue.

1

## PARTIES

**Defendant TerraQuest, Inc.**

6-11. These allegations are directed at TerraQuest, Inc., and therefore no response from this Defendant is required. To the extent a response is required, Defendant admits the allegations in paragraphs 6-11.

**Defendant Derrick Nehrenberg**

12. Defendant admits the allegations in paragraph 12.

13. Defendant admits he was formerly the CEO of TerraQuest.

14. Defendant admits he was a co-founder of TerraQuest, but not the sole founder.

15. Defendant admits he had an ownership interest in TerraQuest.

16. Defendant admits he participated in the business of TerraQuest.

17. Defendant specifically denies the allegations in paragraph 17. While Defendant had certain high-level responsibilities as CEO, Plaintiff was under the direct supervision and management of Aaron Blondeau, the CTO, who directed Plaintiff's day-to-day activities and work assignments. Any interactions between Defendant and Plaintiff regarding compensation were conducted in Defendant's capacity as CEO of TerraQuest, not in his individual capacity.

18. Defendant denies the allegations in paragraph 18 and specifically denies that he was an "employer" as defined by § 203(b) of the FLSA. Defendant's role as CEO and majority shareholder does not create individual liability where Plaintiff's work was directly supervised by another officer of the company.

**Plaintiff Preston Adger**

19-21. Defendant admits the allegations in paragraphs 19-21.

22. Defendant admits that Plaintiff was not paid for certain periods in 2021 through early March 2022 due to TerraQuest's financial difficulties.

23-24. Defendant admits the allegations in paragraphs 23-24.

25. Defendant denies the allegations in paragraph 25. Plaintiff was under direct supervision of the CTO, and any supervisory role of Defendant was solely in his capacity as CEO of TerraQuest.

26. Defendant admits the allegations in paragraph 26.

27-28. Defendant admits that Plaintiff was not paid for certain periods but denies any personal liability for such unpaid wages.

## ADDITIONAL FACTUAL ALLEGATIONS

**Defendant affirmatively states the following:**

a. Prior to the pre-seed investment round, TerraQuest had a formal corporate structure with Defendant serving as CEO and Aaron Blondeau serving as CTO, with clearly defined roles and responsibilities.

b. Throughout Plaintiff's employment, he worked as a software developer under the direct supervision and management of Aaron Blondeau, the CTO, who directed his day-to-day activities and technical work assignments.

c. Throughout the COVID-19 pandemic, TerraQuest maintained transparent communication with employees about financial challenges. The company's pattern of catching up on delayed payments when adequate funding was secured (as with the first EIDL loan) demonstrates TerraQuest's consistent good faith efforts to meet its wage obligations whenever sufficient funds became available. When the second EIDL loan proved insufficient for both operations and back

3

pay, TerraQuest communicated this situation to employees while continuing to seek additional funding sources.

d. In mid-2021, as part of corporate restructuring efforts, TerraQuest pivoted its business model based on investor feedback. Following established corporate procedures, Plaintiff initiated discussions with TerraQuest about acquiring a corporate equity stake. These negotiations were conducted through formal corporate channels, with Defendant acting solely in his capacity as CEO of TerraQuest.

e. In August 2021, as part of TerraQuest's formal equity agreement process, Plaintiff agreed to defer his wage claims until after TerraQuest received seed funding. This agreement was part of TerraQuest's corporate restructuring strategy, which included offering equity to key personnel, and was based on the company's projected timeline for securing additional financing within 3-5 months.

f. After pre-seed funding, Plaintiff worked entirely remotely and never worked from TerraQuest's office location, where the CEO worked. All of Plaintiff's work assignments, technical direction, and day-to-day supervision were handled remotely by the CTO, Aaron Blondeau. Defendant had no direct oversight of Plaintiff's daily work activities or schedule.

g. When the carbon credit market unexpectedly and dramatically shifted in the third month after pre-seed funding, causing customers on deck to abandon plans to adopt TerraQuest, the Defendant and the CTO voluntarily stopped taking their own compensation to ensure other non-officer employees could be paid longer.

h. Defendant worked with investors to establish clear benchmarks for bridge funding, but the team was unable to meet these benchmarks.

i. Throughout Plaintiff's employment, TerraQuest conducted regular team meetings where the company's financial status, including its declining runway and investor requirements for additional funding, were openly discussed with all team members.

j. All team members, including Plaintiff, were aware that continued employment carried the risk of non-payment if investor funding was not secured, yet chose to continue working with this knowledge.

k. Despite TerraQuest being essentially insolvent by February 2022, Defendant continued working without compensation to try to save the company, including securing entry into a venture foundry program from June 2022 to August 2022.

l. Only after TerraQuest was not selected to continue in the venture foundry program did Plaintiff elect to pursue legal action for unpaid wages.

m. After receiving notice of potential litigation, Defendant entered into a tolling agreement with Plaintiff's counsel and made good faith efforts to sell TerraQuest or its assets to satisfy the wage claims, but the pending litigation hindered these efforts.

n. Upon information and belief, in 2022, Plaintiff chose to follow his direct supervisor, Aaron Blondeau, to employment at Orchard, where Mr. Blondeau serves as Director of Technology and continues to supervise Plaintiff's work, demonstrating the nature of their professional relationship.

## **LEGAL CLAIMS**

**First Cause of Action: FLSA Violations**

29-35. Defendant denies all allegations of FLSA violations as they pertain to him individually. While Defendant acknowledges that wages were unpaid, he denies personal liability under the FLSA as he was acting solely in his capacity as an officer of TerraQuest.

**Second Cause of Action: Colorado Wage Act Violations**

36-52. Defendant denies all allegations of Colorado Wage Act violations as they pertain to him individually. While Defendant acknowledges that wages were unpaid, he denies personal liability under Colorado law as he was acting solely in his capacity as an officer of TerraQuest.

**Third Cause of Action: Conversion/Theft of Services**

53-56. Defendant denies all allegations of conversion or theft of services. Any failure to pay wages was due to TerraQuest's financial inability to pay, not any intentional act by Defendant individually.

## AFFIRMATIVE DEFENSES

1. Corporate Shield Defense: Any actions taken by Defendant were in his capacity as an officer of TerraQuest, Inc., and not in his individual capacity. This includes both:

   a. High-level corporate decisions regarding company funding and operations

   b. Negotiations regarding Plaintiff's equity stake in the company

2. Lack of Direct Supervision: Defendant was not Plaintiff's direct supervisor and did not control his day-to-day activities, which were managed by the CTO, Aaron Blondeau.

3. Financial Impossibility: TerraQuest's failure to pay wages was due to financial impossibility and lack of available funds, not any willful or intentional act.

4. Good Faith: Defendant demonstrates good faith through:

   a. Prioritizing non-officer employee pay over his own compensation

   b. Continuous efforts to secure additional funding

   c. Pursuing multiple business opportunities to save the company

   d. Attempting to negotiate settlements through the tolling agreement

5. Business Judgment Rule: Any decisions regarding allocation of corporate resources during financial distress were made in good faith exercise of business judgment to preserve company operations and maximize the potential for ongoing operations and eventual payment of all obligations.

6. Waiver: Plaintiff waived his right to immediate payment of wages when he negotiated for equity in August 2021 and agreed to defer wage claims until after seed funding.

7. Equitable Estoppel: Plaintiff should be estopped from claiming willful non-payment of wages because:

   a. He voluntarily negotiated for equity instead of demanding immediate payment

   b. He waited until after all rescue efforts failed before pursuing legal action

   c. His delay in bringing suit contributed to the company's inability to secure new funding or sell its assets

8. Laches: Plaintiff's delay in bringing this action until 2024, despite the issues arising in 2021-2022, has prejudiced Defendant's ability to defend against these claims and secure alternative funding for the company.

9. Lack of Individual Liability: Defendant is not an "employer" under the FLSA or Colorado wage laws in his individual capacity because:

   a. Plaintiff's day-to-day work was supervised by the CTO

   b. Any interactions regarding compensation were conducted in Defendant's corporate capacity as CEO

   c. Corporate structure and roles were clearly defined and maintained

10. Unclean Hands: Plaintiff's conduct should bar or reduce his recovery because:

   a. Plaintiff engaged in strategic behavior by:

      i. Negotiating for equity while already owed back wages

      ii. Voluntarily agreeing to defer wage claims in exchange for potential ownership

      iii. Waiting to pursue legal action until after all rescue efforts failed

  b. Plaintiff's delayed legal action harmed TerraQuest's ability to:

      i. Secure new investors

      ii. Sell company assets

      iii. Reach settlement of wage claims

  c. Plaintiff's conduct demonstrates speculation rather than wage protection through:

      i. Choosing equity over immediate wage payment

      ii. Only pursuing wage claims after company rescue efforts failed

11. Assumption of Risk:

  a. Through regular team meetings, Plaintiff had full knowledge of TerraQuest's financial situation and the risks of continued employment without guaranteed payment

  b. Plaintiff voluntarily chose to continue working with knowledge of:

      i. The company's financial difficulties

      ii. The dependence on securing additional investment

      iii. The risk that wages might not be paid if funding wasn't secured

  c. Plaintiff's claims should be barred or reduced because he assumed the risk of non-payment by continuing to work with knowledge of these circumstances

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant Derrick Nehrenberg respectfully requests that this Court:

A. Dismiss all claims against him in his individual capacity;

B. Award him costs and fees as appropriate; and

C. Grant such other relief as the Court deems just and proper.

Respectfully submitted this 29th day of **October, 2024**.


/s/ Derrick Nehrenberg

**Derrick Nehrenberg, Pro Se**

812 Gothic Ave., Crested Butte, CO 81224

(719) 221-9124

derricknehrenberg@gmail.com

9

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of October, 2024, I served a true and correct copy of the foregoing ANSWER TO COMPLAINT via EMAIL to:

Penn A. Dodson

AndersonDodson, P.C.

11 Broadway, Suite 615

New York, NY 10004

penn@andersondodson.com